UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY GONZALEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>  Defendant. | No. EDCV 07-00647 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Mary Gonzalez ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her late husband's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. This matter is before the Court on the parties' Joint Stipulation ("Jt. Stip."), filed on February 13, 2008. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

I.

**PROCEDURAL HISTORY**

Luis Gonzalez filed applications for DIB and SSI on September 19, 2003. (Administrative Record ("AR") 61, 251). Mr. Gonzalez alleged that he was disabled due to cracked ribs, three hernias, fatigue, and a sleeping disorder, and asserted a disability onset date of December 15, 2001. (AR 68, 80).

The Agency denied Mr. Gonzalez's claims for benefits initially and upon reconsideration. (See AR 25, 30). On June 13, 2005, Administrative Law Judge ("ALJ") Larry Parker conducted a brief hearing, after which the case was continued to give Mr. Gonzalez time to find an attorney. (AR 271-79). On December 8, 2005, ALJ James Carletti conducted a supplemental hearing, at which Mr. Gonzalez was represented by counsel. (AR 280-99). ALJ Carletti subsequently denied benefits in a written decision dated March 30, 2006. (AR 13-22). The Appeals Council affirmed the ALJ's decision on February 23, 2007. (AR 4-11). Plaintiff commenced the instant action on behalf of her husband, Mr. Gonzalez, who is apparently now deceased, on April 11, 2007.

II.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her

from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work that she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education and work experience. Tackett, 180 F.3d at 1099-1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240

---

[2] RFC is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## III.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process discussed above. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (AR 18). At step two, the ALJ found that Plaintiff's intercostal sprain/strain left ribcage, pleurisy, and sleep apnea were severe impairments. (AR 18). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 19).

At step four, the ALJ determined that Plaintiff had the RFC to perform work at the medium exertion level. (AR 20, 21). The ALJ found that Plaintiff's allegation that he was more severely restricted due to disabling pain and other symptoms was not credible. (AR 20-21). The ALJ further determined that Plaintiff was capable of performing his past relevant work as an assembler. (AR 21). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act at any time between the alleged disability onset date and the date of his decision. (AR 21).

## IV.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

## V.

## DISCUSSION

Plaintiff contends that the Commissioner's decision should be overturned for four reasons. First, she claims that the ALJ did not properly consider the opinion of Dr. Stuart Menn, a consultative

6

examiner, who reported that Mr. Gonzalez had severe obstructive sleep apnea/hypopnea. (Jt. Stip. at 3-4). Second, Plaintiff claims that the ALJ ignored the testimony of Mr. Gonzalez regarding his severe sleep disorder and failed to provide clear and convincing reasons for rejecting that testimony. (Jt. Stip. at 7-8). Third, Plaintiff claims that the ALJ failed to consider Mr. Gonzalez's testimony regarding the side effects of his medication. (Jt. Stip. at 10-12). Fourth, Plaintiff claims that the ALJ failed to pose a hypothetical question to the vocational expert that incorporated all of Mr. Gonzalez's limitations, including those arising from his sleep disorder and medication side effects. (Jt. Stip. at 13). As set forth below, the Court disagrees with Plaintiff's contentions and instead finds that the ALJ's decision should be affirmed.

A. **Plaintiff's Claim That The ALJ Did Not Properly Consider the Examining Physician's Opinion Does Not Warrant Remand**

Plaintiff contends that the ALJ did not properly consider the February 16, 2004 assessment conducted by Dr. Stuart Menn of Pacific Sleep Medicine Services. (Jt. Stip. at 3). In his assessment, Dr. Menn concluded that Mr. Gonzalez suffered from "severe obstructive sleep apnea/hypopnea, non positional, in that only supine sleep occurred." (AR 248). Plaintiff argues that the ALJ merely summarized this report but did not state whether he accepted or rejected it, and failed to provide the specific and legitimate reasons required for rejecting an examining physician's opinion. (Jt. Stip. at 3-4). This claim does not warrant remand.

The record demonstrates that the ALJ adequately considered Dr. Menn's report in his decision. First, the ALJ evidently relied upon Dr. Menn's opinion to find that Plaintiff's sleep apnea was a severe impairment at step two of the sequential disability analysis. (See AR 18-19). Second, the ALJ noted Dr. Menn's diagnosis of severe obstructive sleep apnea/hypopnea, but also noted that Mr. Gonzalez underwent a successful CPAP titration and that Dr. Menn believed that Mr. Gonzalez would be a "good candidate" for ongoing treatment with nasal CPAP. (AR 20, citing AR 248). Before the ALJ adopted the RFC assessment of the state agency physician,[3] (Dr. Thu Do), that Mr. Gonzalez would be able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, and to stand, walk, and sit for six hours out of an eight-hour workday without any additional exertional or other limitations, the ALJ specifically referenced Dr. Menn's report.[4] (AR 20, citing AR 214-21). As such, the ALJ considered Dr. Menn's report in his determination of Plaintiff's RFC and noted that Dr. Menn successfully treated Mr. Gonzalez's sleep condition. (AR 20).

In sum, nothing in Dr. Menn's report conflicts with the ALJ's RFC finding, or the opinion of any other physician in the record, that Mr. Gonzalez could perform medium-level work without further restrictions,

---

[3] Additionally, Mr. Gonzalez's own treating physician, Dr. Chirag Amin, opined that Mr. Gonzalez could work, with the limitation that he could not perform heavy lifting or repeated bending. (AR 144).

[4] The ALJ did not expressly adopt Dr. Do's assessment; nevertheless, it is clear from the ALJ's decision that he found Mr. Gonzalez could perform work at the medium exertion level, which is consistent in all respects with Dr. Do's opinion. (See AR 21) (concluding that Mr. Gonzalez "retains the [RFC] to perform his past relevant work as an RV assembler," which the vocational expert testified to be at the medium exertional level).

nor does Dr. Menn's report demonstrate that Mr. Gonzalez's sleep disorder imposed any functional limitations on Mr. Gonzalez's ability to work. Although the ALJ found that the sleep disorder was a severe impairment, "[t]he mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Moreover, because the ALJ concurred with Dr. Menn's opinion that Mr. Gonzalez suffered from a severe sleep disorder, he was not required to provide reasons for rejecting that opinion. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999)("Clear and convincing reasons are not required, however, when there is no conflict" between the ALJ's reasoning and physician's opinion). As such, no error occurred.

**B.   The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ erred by failing to consider Mr. Gonzalez's testimony regarding his sleep disorder. (Jt. Stip. at 7-8). At the December 8, 2005 hearing, Mr. Gonzalez testified that he could "fall asleep anywhere," including while sitting, and that he once fell asleep at a stop sign while driving a vehicle with his grandchildren present. (AR 290-91). Mr. Gonzalez testified that he had no warning when this would happen and that it happened "almost everyday." (AR 291). Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting this portion of Mr. Gonzalez's testimony. (Jt. Stip. at 8). The record does not support Plaintiff's claim.

Credibility determinations are the province of the ALJ. Fair v.

Bowen, 885 F.2d 597, 604 (9th Cir. 1989). An ALJ must undertake a two-step analysis when considering a claimant's subjective symptom testimony. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). At the first step, the ALJ must determine whether the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged. Smolen, 80 F.3d at 1281-82. If the claimant produces objective medical evidence of an impairment, shows that the impairment could be expected to produce the symptoms alleged, and there is no evidence of malingering, the ALJ can only reject the claimant's testimony concerning the severity of the symptoms by citing specific, clear, and convincing reasons for doing so. Id. at 1283-84. In making a credibility determination, the ALJ may take into account, among other things: (1) ordinary credibility evaluation techniques, (2) unexplained or inadequately explained failure to seek or follow treatment, and (3) the claimant's daily activities. Id. at 1284. If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ's reasons for rejecting Mr. Gonzalez's allegations were supported by substantial evidence in the record. In his decision, the ALJ noted that Mr. Gonzalez "has alleged more severe restrictions than" found in the physicians' reports of record (including the sleep disorder opinion of Dr. Menn). (AR 20). The ALJ then provided a number of reasons for rejecting Mr. Gonzalez's "allegations of disabling pain, symptoms and limitations." (AR 21). First, the ALJ noted that the opinion of Dr. Amin, Mr. Gonzalez's treating physician, did not provide for a more restrictive RFC, but stated only that Mr. Gonzalez had lost

"fifty percent of his pre-injury capacity for performing activities involving heavy lifting and repeated bending," where Mr. Gonzalez's pre-injury capacity had included lifting weights of up to one hundred and six pounds. (AR 21, citing AR 156).

Second, the ALJ noted the November 4, 2003 opinion of examining physician Dr. Alexandre Mihelson, who performed an internal medicine examination and who noted that, despite Mr. Gonzalez's report of feeling "tired and fatigued most of the time," (AR 200), Mr. Gonzalez was not in distress during the examination, was able to sit up and move without difficulty, did not become short of breath or develop any chest pain or dizziness during the examination, and had normal range of motion in all extremities. (See AR 201-03). Third, the ALJ noted that Mr. Gonzalez was not taking any medication that would impose disabling side effects. (AR 21). Fourth, the ALJ noted that Mr. Gonzalez had not alleged an inability to provide for his own care. (AR 21). Fifth, the ALJ noted that Mr. Gonzalez testified he was able to drive and that he helped his wife with cooking and shopping. (AR 21).

The ALJ could properly use the lack of objective medical evidence to support the extent of Mr. Gonzalez's allegations as a reason to disregard his testimony. See Osenbrock v. Apfel, 240 F.3d 1157, 1165-66 (9th Cir. 2001)(upholding ALJ's credibility determination in part because evaluations revealed little evidence of disabling abnormality of the claimant's spine). Here, no physician found that Mr. Gonzalez's sleep disorder would impose restrictions on his ability to work. As discussed above, Dr. Menn stated that Mr. Gonzalez would be a good candidate for ongoing treatment for his sleep apnea/hypopnea, but said

nothing about any work limitations caused by the sleep disorder. (See AR 248-49).

Furthermore, the ALJ's finding that Mr. Gonzalez was able to provide for his own care and perform other daily activities inconsistent with his allegation that his sleep disorder was disabling, (AR 21), is substantially supported. Mr. Gonzalez testified that he lived with his wife and seven year-old grandson, that he sometimes drove, that he helped his wife with the grocery shopping, that he completed his trade school vocational course without any trouble, and that he used a CPAP machine for sleeping, which helped him. (AR 289). Because the ALJ's credibility determination was substantially supported, this claim does not warrant remand.

## C. The ALJ's Determination That Plaintiff's Alleged Side Effects From Medication Would Not Prevent Him From Performing Medium-Level Work Activities Is Substantially Supported

Plaintiff contends that the ALJ did not properly evaluate Mr. Gonzalez's claim that his use of Ibuprofen caused him dizziness and constipation. (Jt. Stip. at 10-11). Plaintiff argues that these side effects are consistent with the Ibuprofen that Mr. Gonzalez was taking and that, therefore, the ALJ was obliged to "properly evaluate and consider the type, dosage, effectiveness, and side effects" of that medication. (Jt. Stip. at 11).

Although the "type, dosage, effectiveness, and side effects" of any

medication taken by the claimant to alleviate his or her pain or other symptoms are factors relevant to a disability determination and should be considered by the ALJ, 20 C.F.R. § 404.1529(c)(3)(iv); see also Social Security Ruling ("SSR") 96-8p, available at, 1996 WL 374184, a claimant bears the burden of proving that an impairment, including a medication's side effects, is disabling. Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work); Thomas, 278 F.3d at 960 (upholding the ALJ's rejection of the plaintiff's statements that her medications affected her concentration and made her dizzy where no objective evidence was put forth and the ALJ properly found her testimony was generally not credible). For the following reasons, Plaintiff has not met her burden in this case.

First, the objective medical evidence fails to indicate that Mr. Gonzales experienced any side effects from taking Ibuprofen. None of the physicians, including Mr. Gonzalez's treating physician, Dr. Amin, stated that Mr. Gonzalez complained of any medication side effects. In the disability report Mr. Gonzalez submitted on September 15, 2003 together with his benefits application, he failed to list any medications he was currently taking, let alone side effects that he was experiencing. (AR 73). In a "Pain Questionnaire" completed by Mr. Gonzalez on October 8, 2003, he stated that he was taking "Hydrocodone" for his pain, which caused him to suffer "memory loss" and to not be alert, but he did not state that he was experiencing either dizziness or constipation. (AR 76). In an (undated) disability report Mr. Gonzalez submitted together with his appeal, he stated that he was taking

"Cardural" for "urine" and "sleep." (AR 90). Finally, in a list of medications dated December 8, 2005, Mr. Gonzalez stated he was taking Famotidine for his blood pressure, Terazosin, Meclizine for bladder control, Cheratussin for dizziness, and Ibuprofen for pain, but again failed to indicate any side effects from these medications. (AR 94). Thus, the record fails to support Plaintiff's claim that Mr. Gonzalez's claimed side effects were disabling.

Because the claimed side effects from Mr. Gonzalez's Ibuprofen use are unsupported by medical evidence, they may be considered nothing more than additional subjective complaint testimony, the value of which was discounted by the ALJ in his credibility analysis. See Thomas, 278 F.3d at 960 (finding no error in excluding side-effects where the only evidence was claimant's testimony, and where the ALJ had found the claimant not credible).

Moreover, Plaintiff has failed to demonstrate how these alleged side effects affected Mr. Gonzalez's ability to sustain employment. See Miller, 770 F.2d at 849 (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work); see also Osenbrock, 240 F.3d at 1164 (finding no substantial evidence of impairment from side effects where the record contained "passing mentions of the side effects of [claimant's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [claimant's] ability to work"). For the above reasons, this claim does not warrant remand.

D.  **The ALJ's Failure To Incorporate Alleged Limitations In A Hypothetical Question To The Vocational Expert At Step Four Does Not Warrant Remand**

Plaintiff contends that the ALJ failed to incorporate the limitations imposed by Mr. Gonzalez's sleep disorder and by his medication side effects in a hypothetical question to the vocational expert. (Jt. Stip. at 13). This claim is without merit.

First, because the ALJ found that Mr. Gonzalez could return to his past relevant work, the ALJ was not required to obtain the testimony of a vocational expert at the fourth step of the sequential disability analysis. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996); see also Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (holding that where claimant failed to show he was unable to return to his previous job, the vocational expert's testimony was "useful, but not required," and "[w]hether or not the ALJ erred" in his hypothetical question "is thus irrelevant given the other reliable evidence."). The burden at the fourth step remains with the claimant to show that he can no longer perform her past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(e) and 416.920(e).

The ALJ found that Mr. Gonzalez was capable of performing his past relevant work as an assembler. (AR 21). The ALJ then commented that the VE found Mr. Gonzalez's past relevant work as an RV assembler to be medium and semiskilled and that Mr. Gonzalez's RFC would not preclude his return to this work. (Id.). Although he relied, in part, upon the VE's testimony to conclude that the work was medium and semiskilled, no

further hypothetical to the VE was required because the ALJ found that Mr. Gonzalez could return to his past relevant work. <u>Matthews</u>, 10 F.3d at 681.

Moreover, even assuming that the ALJ was required to pose a hypothetical to the VE, the ALJ was free to omit alleged restrictions that were not supported by substantial evidence in the record. <u>See</u> <u>Osenbrock</u>, 240 F.3d at 1164-65. Because, as discussed above, the work limitations allegedly caused by Mr. Gonzalez's sleep disorder and Ibuprofen side effects were properly rejected by the ALJ as not supported by any objective medical evidence in the record, the ALJ would not have been obliged to incorporate these restrictions into a hypothetical question. This claim does not warrant remand.

## VI.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: March 31, 2008.

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE